**Opinion issued November 26, 2019**



In The

# Court of Appeals

**For The**

# First District of Texas

———————————

## NO. 01-18-00442-CR

———————————

**OTONIEL GUZMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 432nd District Court**
**Tarrant County, Texas**
**Trial Court Case No. 1540453R**

## O P I N I O N

A jury convicted appellant, Otoniel Guzman, of the first-degree felony offense

of continuous sexual abuse of a young child and assessed his punishment at thirty

years' confinement.[1] In six issues, appellant contends that the trial court erred by (1) allowing the testimony of the complainant's grandmother as an outcry witness; (2) overruling his motion for mistrial after the complainant's grandmother commented on his right to remain silent; (3) denying his request for a writ of attachment for a prospective juror who did not appear for voir dire; (4) allowing him to be tried under a statute that is unconstitutional because it does not require an unanimous jury to convict a defendant for the offense of continuous sexual abuse; and (5) and (6) refusing his requested jury instruction on the lesser-included offenses of indecency with a child by exposure and indecent exposure.

We affirm.

## Background

Appellant and Ninfa Castillo were married. Castillo has three adult daughters from a previous marriage, and her oldest daughter has three children including Jessica,[2] the complainant, who was born in March 2001, and Jessica's two younger brothers. Castillo and appellant obtained custody of Jessica and her siblings when Jessica was around six years old. Castillo, appellant, Jessica, and her younger

---

[1] *See* TEX. PENAL CODE ANN. § 21.02(b).

[2] In this opinion, we use the pseudonym "Jessica" for the complainant to protect her privacy.

brothers all lived together in a mobile home in Arlington, Texas.[3] Jessica had her own bedroom. She was seventeen years old at the time of trial.

Appellant is not biologically related to Jessica or her brothers. Castillo testified that appellant favored Jessica over her brothers and that he would take her shopping and buy her things, but he would not do so for her brothers. According to Castillo, appellant would spoil Jessica, including buying her expensive phones and giving her significantly more money at Christmas than he would give to her brothers. Appellant would allow Jessica's brothers to spend the night with friends, but he would rarely let Jessica do so with her friends. During summer vacations, Jessica and her brothers would spend around two months in San Antonio with their father's sister. Castillo testified that appellant did not mind Jessica's brothers being away from home for that length of time, but he did not want Jessica to be gone for so long, and he would offer to drive to San Antonio to bring her home. Castillo stated that she spoke with appellant about his preferential treatment of Jessica, but appellant denied that anything untoward was happening with Jessica. Castillo had no indication that an inappropriate relationship existed between appellant and Jessica.

---

[3] The Texas Supreme Court transferred this appeal from the Court of Appeals for the Second District of Texas to this Court pursuant to its docket-equalization authority. *See* TEX. GOV'T CODE ANN. § 73.001 ("The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer.").

Appellant and Castillo had different work schedules. Appellant worked in construction and was frequently out of town on various jobs. When he was in Arlington, he typically worked from around 7:00 a.m. until 5:30 p.m. Castillo, meanwhile, worked the night shift at PolyAmerica and typically worked from 5:30 p.m. until 5:30 a.m., six days per week. Appellant would supervise the children while Castillo was at work.

On September 27, 2015, Castillo arrived home from work around 6:00 a.m. Appellant was asleep in their bedroom, and she was surprised to see him because he had been working out of town and was not supposed to be home until the following weekend. Castillo went to sleep on the living room sofa and woke up around 10:00 a.m. She saw appellant leave the house, and she went back to sleep. She called appellant about an hour later, and appellant said that he was not coming home anymore. He told Castillo, "I'm not returning home before you lock me up." Castillo did not know what appellant meant by this, and appellant refused to explain.

While Castillo was still sitting on the sofa, Jessica walked into the living room, crying. When Castillo asked her why she was crying, Jessica told her that appellant had tried to touch her vagina and her breasts the previous evening. Jessica told Castillo that this happened in her bedroom while Castillo was at work. She tried to kick appellant away and she was screaming, and appellant left her bedroom but later came back and "tried to do it again." Castillo testified that this allegation surprised

4

her, and she asked Jessica what she wanted to do. Jessica responded that she wanted to file charges, and Castillo took her to the Arlington Police Department.

Castillo testified that, after this incident, appellant no longer lived with her and the children. Instead, he lived at an address in Alvarado, Texas. Castillo informed the police of this address, but appellant was not arrested until January 2017, more than fifteen months after Jessica's outcry. Castillo occasionally saw appellant after the incident, usually at convenience stores where appellant would give Castillo money to help with bills, and she did at one point invite him back to their home in Arlington. Castillo stated that she invited appellant to the house "to give him a chance to explain what had happened, what he did to my granddaughter." She stated, "He never say [sic] anything to me—" and defense counsel objected, arguing that this testimony improperly commented on appellant's right to remain silent. The trial court instructed the jury to disregard Castillo's statement, but it denied defense counsel's request for a mistrial.

Jessica testified that appellant began touching her inappropriately when she was in fifth grade, around 2011 or 2012. Appellant would come into her bedroom while she was asleep—and while Castillo was at work—and touch her breasts and her vagina with his fingers. This happened around two or three times per week during the weeks appellant was working in Arlington, and this went on for around five years. Jessica also testified that appellant would put his mouth on her vagina and he

5

would make her touch his penis with her hand. When Jessica was in seventh grade, he made her watch pornography on his phone, but this was the only occasion that he did this.

With respect to the incident on September 26 and 27, 2015, which occurred when she was fourteen years old, Jessica testified that appellant "came into [her] room, did the same things as he would any other night." On request by the State, she clarified:

> Doing things with my vagina, my breasts, using his mouth. And that night—I got tired of it that night. I was trying to pull away, and I started to wake up, and I guess he noticed that I started crying. He walked away.

Appellant came back into her bedroom that evening, but Jessica pretended to be asleep, and he did not do anything more to her. She further testified, "I really had never cried any of the other nights, and when I cried this night, that's what made me feel like it just needs to stop already." She stated that she was scared to tell anyone about the abuse because she knew that appellant helped her family financially and "was a big part of our lives." Jessica decided to tell Castillo what had been happening, but she did not give Castillo many details.

Jessica testified that she and her family continued to see appellant after she reported the abuse to the police, stating, "I was okay with [seeing him] because I was used to facing everything throughout the years." She stated that she still loved

him and still wanted to see him "[b]ecause I knew he was my grandpa no matter through all the things."

On cross-examination, Jessica had the following exchange with defense counsel:

Q:    You told [Castillo] that [appellant] touched you on your private parts; is that correct?

A:    Yes.

Q:    Back on September 27th?

A:    Yes.

Q:    And that he exposed himself; is that correct?

A:    No.

Q:    He would have had to expose himself if—would that be correct?

A:    Can you—

Q:    In doing some of these things back on September 27th?

A:    Can you say that again? I'm sorry.

Q:    He would have had to expose himself, wouldn't he, to do some of these things back on September 27th?

A:    Yes.

Alexis Chase, a forensic interviewer with Alliance for Children, conducted Jessica's forensic interview on October 12, 2015. Chase served as an outcry witness for all instances of abuse that Jessica disclosed, with the exception of the events of September 26 and 27, 2015, for which Castillo served as the outcry witness. Chase described Jessica as quiet, hesitant, and emotional during the interview. Jessica told

7

Chase that her grandfather—appellant—began touching her vagina with his fingers when she was in fifth grade, and this continued approximately twice per week until she was fourteen years old. Jessica told Chase that the abuse would occur at night, in her bedroom, and she would be lying on her bed. Chase testified that Jessica disclosed other acts of sexual abuse that appellant would perform on her, including touching her breasts, putting his mouth on her vagina, and making her touch his penis with her hand. Jessica told Chase that all of these actions occurred more than one time.[4]

Appellant testified on his own behalf. He denied ever touching Jessica inappropriately. Appellant testified that, on the morning of September 27, 2015, he had a heated argument with Castillo after she refused to allow appellant to take the children to Oklahoma with a friend and his family, and he expressed his intention to seek a divorce from Castillo. After Castillo attempted to escalate the argument into a physical fight, appellant left the house without any of his clothes or other belongings. He stated that he learned of Jessica's allegations against him approximately one week later and that the allegations shocked him. He testified that, after the allegations, when he began living in Alvarado, Castillo, Jessica, and

---

[4]    Theresa Fugate, a sexual assault nurse examiner, conducted a medical examination of Jessica on October 19, 2015. She testified concerning statements that Jessica made to her during the course of the exam. Fugate's testimony was consistent with Chase's testimony concerning statements Jessica made during her forensic interview.

Jessica's younger brothers visited him there about four times. Jessica, and all of the other family members, "acted all the same," and he did not notice any difference in their behavior compared to before the allegations. Appellant also testified that, over the years, he had several disagreements with Jessica, including over phone and tablet usage, alleged misrepresentations Jessica made on social media concerning her age, alleged out-of-state phone calls, alleged requests by Jessica to have a boyfriend come live with them, and Jessica's allegedly sneaking out of the house at night.

The indictment against appellant alleged six counts.[5] The first count, for continuing sexual abuse of a young child, alleged:

> That Otoniel Guzman, hereinafter called Defendant, in the County of Tarrant, State of Texas, on or about the 1st day of September 2011 through the 5th day of March 2015, during a period of time that is 30 days or more in duration, did commit two or more acts of sexual abuse, namely: aggravated sexual assault of a child under 14: by causing the finger of the defendant to penetrate the sexual organ of [Jessica], and/or by causing the mouth of the defendant to contact the sexual organ of [Jessica], and/or indecency with a child: by causing [Jessica] to contact any part of the genitals of the defendant, and/or by causing the hand of the defendant to contact any part of the genitals of [Jessica], and at the time of the commission of each of these acts of sexual abuse the defendant was 17 years of age or older and [Jessica] was younger than 14 years of age.

Counts two through five of the indictment—two counts of aggravated sexual assault of a child and two counts of indecency with a child by contact—alleged each specific

---

[5] Count six alleged indecency with a child by touching Jessica's breast. The State waived this count prior to the beginning of testimony.

act of sexual abuse mentioned in count one of the indictment as a separate charge. The indictment alleged that counts two through five occurred "on or about" September 1, 2011.

At the charge conference, defense counsel requested that the trial court instruct the jury on two lesser-included offenses: indecency with a child by exposure and indecent exposure. The trial court denied this request. The jury charge submitted count one—continuous sexual abuse of a young child—to the jury and counts two through five as lesser-included offenses, instructing the jury to consider those counts only if it did not reach a verdict on count one. The jury found appellant guilty of continuous sexual abuse of a young child and assessed his punishment at thirty years' confinement. This appeal followed.

### Outcry Witness Testimony

In his first issue, appellant contends that the trial court erred by allowing Castillo to testify as an outcry witness and, as a result, her testimony concerning what Jessica had told her about the abuse constituted inadmissible hearsay.

#### A. *Standard of Review and Governing Law*

Hearsay is an out-of-court statement that a party offers in evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Generally, hearsay is not admissible unless provided for by the Rules of Evidence, a statute, or other rule. TEX. R. EVID. 802.

10

One recognized exception to the general prohibition against hearsay allows, in the prosecution for certain sexual abuse cases involving children, the admission of the child's out-of-court statement concerning the abuse made to an outcry witness. *See Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011). Under Code of Criminal Procedure article 38.072, a child complainant's out-of-court statement is admissible if it describes the alleged offense, was made by the child against whom the charged offense was allegedly committed, and was made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. TEX. CODE CRIM. PROC. ANN. art. 38.072(a); *Sanchez*, 354 S.W.3d at 484. The child's statement "must be 'more than words which give a general allusion that something in the area of child abuse is going on'; it must be made in some discernable manner and is event-specific rather than person-specific." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011) (quoting *Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)). Hearsay testimony from more than one outcry witness may be admissible under article 38.072 "only if the witnesses testify about different events." *Id.*

Article 38.072 also includes procedural requirements, including that the party intending to offer the statement must, on or before the fourteenth day before trial begins, notify the adverse party of its intention to offer the statement, provide the name of the outcry witness, and provide a written summary of the statement. TEX.

CODE CRIM. PROC. ANN. art. 38.072(b)(1); *Sanchez*, 354 S.W.3d at 484. Outside the presence of the jury, the trial court must conduct a hearing and find that the statement is reliable "based on the time, content, and circumstances of the statement." TEX. CODE CRIM. PROC. ANN. art. 38.072(b)(2); *Sanchez*, 354 S.W.3d at 484–85, 488 ("The only task [article 38.072] assigns the trial court is to determine whether, based on the time, content, and circumstances of the statement, the outcry is reliable."). The child complainant must testify or be available to testify at the proceeding in court. TEX. CODE CRIM. PROC. ANN. art. 38.072(b)(3); *Sanchez*, 354 S.W.3d at 485.

The trial court has broad discretion to determine which of several witnesses is an outcry witness, and we will not disturb this decision absent a clear abuse of discretion. *Chapman v. State*, 150 S.W.3d 809, 813 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). A trial court abuses its discretion when its decision is outside the zone of reasonable disagreement. *Id.*

## B.   *Analysis*

Appellant argues that Castillo was not a proper outcry witness because, during the outcry-witness hearing outside the presence of the jury, Castillo testified only that Jessica had told her that appellant touched her leg and tried to pull her closer to him—actions that do not constitute a criminal offense—but during trial Castillo improperly expanded her testimony and testified that Jessica told her that appellant touched her breasts.

At the outcry-witness hearing, Castillo testified that she works the night shift and that, on the morning of September 27, 2015, she arrived at the home she shared with appellant, Jessica, and Jessica's two younger brothers, around 5:30 or 6:00 a.m. Appellant was asleep in their bedroom, and Castillo decided to sleep on the sofa in the living room. When Castillo woke up around 10:00 a.m., she noticed appellant had left the house, and she called him and asked where he was. Appellant told her that he was not coming home, and he stated, "I'm not coming home before you lock me up." Castillo did not understand what appellant was referring to with this statement.

Shortly thereafter, Jessica woke up and came into the living room to talk to Castillo. Jessica was crying, and she told Castillo that appellant had gone into her bedroom that night and touched her inappropriately. Castillo testified that Jessica told her that appellant "pushed—he grabbed [Jessica's] leg, struggled, you know, because she was in the corner and she was pulling her leg close to the bed." Jessica told Castillo that appellant came into her bedroom twice that night: the first time she struggled and was crying and kicking appellant, and then he came into her room a second time after she had calmed down. Jessica also told Castillo that this was not the first time that this had occurred. Jessica did not provide details to Castillo of other times that appellant had touched her inappropriately, but she said it had happened more than five times.

Defense counsel objected to Castillo's testifying as an outcry witness, pointing out that in Castillo's testimony during the hearing, she "just makes reference to the fact that the child says that her leg was pulled and that [appellant] was pulling her leg," and that Castillo did not testify concerning any specific details about the incident that Jessica had told to her. Defense counsel argued that Jessica's statement to Castillo did not constitute an outcry "because it does not pertain to any crime."

The State then recalled Castillo and asked her if Jessica had specifically told Castillo where appellant had touched her. Castillo responded, "On her private part." The State then refreshed Castillo's recollection using a written statement Castillo had made to the police a few weeks after Jessica made her outcry and Castillo reported the abuse to police. Castillo then testified that Jessica told her that appellant had touched her on her vagina and on her breasts.

The trial court ruled that Castillo was a proper outcry witness and could testify concerning what Jessica told her on the morning of September 27, namely, that the previous night appellant had touched Jessica's vagina and breasts. The trial court agreed with the State that Jessica's outcry was credible and reliable. The trial court also agreed with the State that because Jessica did not tell Castillo details about other times she had been abused by appellant, Castillo was not a proper outcry witness

14

with respect to those incidents.[6] Castillo's trial testimony was consistent with the facts to which she had testified during the course of the outcry-witness hearing.

The trial court had evidence before it that Castillo was the first person over the age of eighteen whom Jessica told about appellant's inappropriate actions that occurred on September 26 and 27, 2015. Castillo's testimony at the outcry-witness hearing reflected that Jessica told her that, in addition to grabbing her leg, appellant also touched her on her vagina and her breasts that night. We conclude that the trial court did not abuse its discretion in allowing Castillo to testify as an outcry witness concerning the incident of abuse on September 26 and 27. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072(a)–(b); *Martinez v. State*, 178 S.W.3d 806, 811 (Tex. Crim. App. 2005) ("[The outcry] witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime.").

Appellant also contends that Castillo's testimony concerning what Jessica told her on September 27 violates the Confrontation Clause. The Confrontation Clause "prohibits the admission of a testimonial statement of a declarant who does not testify at trial, unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant." *Torres v. State*, 424 S.W.3d 245, 259 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). When, however, "the

---

[6] Alexis Chase, who conducted Jessica's forensic interview, served as the outcry witness for the other incidents of abuse. Appellant makes no complaint on appeal concerning the propriety of Chase as an outcry witness for these incidents.

declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004); *Crawford v. State*, 139 S.W.3d 462, 464–65 (Tex. App.—Dallas 2004, pet. ref'd) (concluding that Confrontation Clause did not bar outcry witness's testimony concerning out-of-court statement by child declarant because complainant testified at trial and therefore defendant had opportunity to cross-examine complainant); *see also Eustis v. State*, 191 S.W.3d 879, 886 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (holding, in aggravated assault case, that admission of unsigned transcription of complainant's oral statement did not violate Confrontation Clause because complainant testified at trial and defendant had opportunity to cross-examine her).

In this case, both Castillo and Jessica testified at trial. Appellant was able to, and did, cross-examine both of them about the events that occurred on September 26 and 27, as well as Jessica's outcry statement to Castillo concerning the abuse. Because Jessica, the declarant of the out-of-court outcry statement, testified at trial and was subject to cross-examination by appellant, admission of her outcry statement through Castillo did not violate appellant's rights under the Confrontation

Clause.[7] *See Crawford*, 541 U.S. at 59 n.9; *Eustis*, 191 S.W.3d at 886; *Crawford*, 139 S.W.3d at 464–65; *see also Rojas v. State*, No. 02-15-00144-CR, 2016 WL 6648748, at *5–6 (Tex. App.—Fort Worth Nov. 10, 2016, pet. ref'd) (mem. op., not designated for publication) (holding that forensic nurse examiner could testify concerning her diagnosis of child complainant as victim of sexual abuse which was based in part on complainant's out-of-court statements made during examination and that this testimony did not violate Confrontation Clause because child declarant testified at trial and was subject to cross-examination).

We overrule appellant's first issue.

## Witness's Testimony Concerning Right to Remain Silent

In his second issue, appellant contends that the trial court erroneously denied his motion for mistrial, made after Castillo testified that after Jessica's outcry

---

[7] To the extent appellant complains that he was denied his rights under the Confrontation Clause to cross-examine either Castillo or Jessica concerning any biases they had against him or any motives to lie, appellant has presented no argument on appeal concerning specific questions or topics that he was denied the opportunity to ask. *See Johnson v. State*, 490 S.W.3d 895, 909–10 (Tex. Crim. App. 2016) (noting that "main purpose" behind Confrontation Clause "is to secure for the opposing party the opportunity of cross-examination" and that right of cross-examination "allows a party to attack the general credibility of that witness 'or to show their possible bias, self-interest, or motives in testifying,'" but right of cross-examination is "not unqualified" and trial courts "retain wide latitude" to limit scope and extent of cross-examination as long as limits do not infringe upon Confrontation Clause's guarantee of "an opportunity for effective cross-examination"). Because appellant has presented no specific arguments on this complaint, we conclude that he has failed to adequately brief this complaint. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

appellant refused to answer Castillo's question concerning what had happened with Jessica. Specifically, appellant argues that Castillo's testimony improperly commented on his right to remain silent.

A mistrial is the appropriate remedy when the objectionable event is "so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (quoting *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) ("A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'") (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). We determine whether an error requires a mistrial based on the particular facts of the case. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins*, 135 S.W.3d at 77. We review a trial court's refusal to grant a motion for mistrial for an abuse of discretion. *Archie*, 340 S.W.3d at 738–39.

The Fifth Amendment of the United States Constitution "guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution [from] commenting on the silence of a defendant who asserts the right." *Jenkins v. Anderson*, 447 U.S. 231, 235 (1980); *Salinas v. State*, 369 S.W.3d 176,

18

177–78 (Tex. Crim. App. 2012) (noting that Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself" and that Supreme Court has "interpreted this as prohibiting the State from commenting on a defendant's refusal to testify at trial"). "A defendant's silence *before* trial, however, is considerably less protected from being commented upon at trial." *Salinas*, 369 S.W.3d at 178. The Supreme Court has held that no Fifth Amendment violation occurs when a defendant testifies at trial and the State impeaches the defendant with his prior silence. *Jenkins*, 447 U.S. at 235. A criminal defendant has immunity from giving testimony, but a defendant may waive this immunity and choose to testify. *Id.* (quoting *Raffel v. United States*, 271 U.S. 494, 496–97 (1926)). When a defendant "takes the stand in his own behalf, he does so as any other witness, and within the limits of the appropriate rules he may be cross-examined," such that a defendant who testifies is "subject to cross-examination impeaching his credibility just like any other witness." *Id.* at 235–36. The Supreme Court thus concluded that "the Fifth Amendment is not violated by the use of prearrest silence to impeach a criminal defendant's credibility." *Id.* at 238; *Salinas*, 369 S.W.3d at 178 ("[T]he Supreme Court has held that pre-arrest, pre-*Miranda* silence can be used to impeach a defendant who testifies.").

In *Salinas*, the Court of Criminal Appeals addressed a question left open by the United States Supreme Court: whether pre-arrest, pre-*Miranda* silence is

19

admissible against a non-testifying defendant. *See* 369 S.W.3d at 178. The court noted that the plain language of the Firth Amendment "protects a defendant from *compelled* self-incrimination." *Id.* at 179. In a pre-arrest, pre-*Miranda* situation, a suspect's interactions with police officers are not compelled. *Id.* "Thus, the Fifth Amendment right against compulsory self-incrimination is 'simply irrelevant to a citizen's decision to remain silent when he is under no official compulsion to speak.'" *Id.* (quoting *Jenkins*, 447 U.S. at 241 (Stevens, J., concurring)). The Court of Criminal Appeals ultimately held that "pre-arrest, pre-*Miranda* silence is not protected by the Fifth Amendment right against compelled self-incrimination, and that prosecutors may comment on such silence regardless of whether a defendant testifies." *Id.*; *see also Waldo v. State*, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988) ("Prearrest silence is a constitutionally permissible area of inquiry."); *Buentello v. State*, 512 S.W.3d 508, 521 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) (holding that trial court did not err in refusing to grant motion for mistrial made in response to State's questioning of police investigator concerning whether, in early stages of his investigation before defendant had been charged, defendant ever agreed to give statement because, at that point in time, defendant had not been arrested or read his *Miranda* warnings and therefore defendant's silence was not protected by Fifth Amendment right against compelled self-incrimination and was permissible area of inquiry for State at trial).

20

In this case, it is undisputed that Jessica made her complaint to police officers in September 2015 and that appellant was not arrested for the underlying offense until January 2017. Castillo testified concerning the contact that she had with appellant after Jessica made her outcry and after she made the initial report to police. Castillo testified that she occasionally met with appellant at convenience stores, primarily to obtain money from appellant to pay the family's bills and that, at one point, she had invited him to the house where they had lived before the incident and asked him to stay. The State asked Castillo why she had invited appellant to their house after Jessica's allegations. Castillo responded: "We were just him and me. I was trying to give him a chance to explain what had happened, what he did to my granddaughter. He never say [sic] anything to me—" At this point, defense counsel objected, arguing that Castillo's testimony was "a direct comment on [appellant's] remaining silent in the face of an allegation," that the testimony was highly prejudicial, and that the testimony was "a comment on his right to remain silent" that violated appellant's Fifth Amendment rights. Defense counsel moved for a mistrial. The trial court denied counsel's request for a mistrial, but instructed the jury to disregard Castillo's comment. Appellant later testified on his own behalf.

Castillo's testimony concerned a conversation that she had with appellant regarding the allegations before appellant was arrested. Appellant's interaction with Castillo was not "compelled," and he was under no "official compulsion" to speak

21

and answer her questions. *See Salinas*, 369 S.W.3d at 179. Because this conversation with Castillo occurred prior to appellant's arrest and his being read his *Miranda* warnings, his silence during this conversation does not implicate, and is not protected by, the Fifth Amendment's right against compelled self-incrimination. *Id.* We therefore hold that, because Castillo's testimony was admissible, the trial court did not abuse its discretion by refusing to grant appellant's request for a mistrial. *See Buentello*, 512 S.W.3d at 521.

We overrule appellant's second issue.

### Writ of Attachment for Prospective Juror

In his third issue, appellant complains that the trial court erred by denying his request for a writ of attachment to secure the presence of a veniremember who did not show up for voir dire because she was in Las Vegas at the time trial started.

Code of Criminal Procedure article 35.01 provides:

> When a case is called for trial and the parties have announced ready for trial, the names of those summoned as jurors in the case shall be called. Those not present may be fined not less than $100 nor more than $500. An attachment may issue on request of either party for any absent summoned juror, to have him brought forthwith before the court. A person who is summoned but not present, may upon an appearance, before the jury is qualified, be tried as to his qualifications and impaneled as a juror unless challenged, but no cause shall be unreasonably delayed on account of his absence.

TEX. CODE CRIM. PROC. ANN. art. 35.01. This statute "is directory and not mandatory." *Porter v. State*, 623 S.W.2d 374, 377 (Tex. Crim. App. 1981). "[I]n the

22

absence of governmental misconduct in summoning the venire, the failure to grant attachments [for absent veniremembers] is not reversible error unless [the defendant] shows injury." *Dowthitt v. State*, 931 S.W.2d 244, 251 (Tex. Crim. App. 1996); *Jackson v. State*, 745 S.W.2d 4, 17 (Tex. Crim. App. 1988). To make a showing of injury, the defendant must demonstrate that he was forced to accept an "objectionable juror," that is, "one against whom such cause for challenge exists as would likely affect [the juror's] competency or his impartiality in the trial." *Jones v. State*, 119 S.W.3d 766, 785 (Tex. Crim. App. 2003) (quoting *Stephenson v. State*, 494 S.W.2d 900, 904 (Tex. Crim. App. 1973)). We review a trial court's refusal to issue a writ of attachment for a prospective juror who does not appear for voir dire for an abuse of discretion. *See Jackson*, 745 S.W.2d at 17; *Porter*, 623 S.W.2d at 377.

Here, before voir dire began, the trial court and the parties discussed an issue concerning a veniremember. One of the prospective jurors had informed the trial court that she was in Las Vegas and that she would not be present for jury selection. The State had no objection to the trial court's suggestion that this veniremember be excused. Defense counsel, however, did object, arguing that this veniremember "was duly served to be here, and she chose voluntarily to leave" and that proceeding in the absence of this veniremember violated appellant's due process rights and his right to have a fair jury. Defense counsel requested that the trial court issue a writ of

attachment and not proceed with jury selection until this veniremember was present. The trial court denied this request. The trial court proposed adding another person to the venire, to take the place of the absent veniremember, if appellant so desired. Defense counsel objected to this proposal, arguing that appellant had "a right to have the panel that was actually . . . brought to the Court, at least served to be here." The parties then proceeded to conduct voir dire. At the end of voir dire, defense counsel did not make any further objection concerning the absent veniremember, nor did defense counsel identify an objectionable juror or object to the seating of the jury.

We conclude that the record does not demonstrate that appellant suffered an injury resulting from the trial court's refusal to issue a writ of attachment for the absent veniremember. *See Jones*, 119 S.W.3d at 785 (holding that, to demonstrate injury resulting from trial court's failure to grant attachment, defendant must demonstrate that he was forced to accept "objectionable juror," or juror "against whom such cause for challenge exists as would likely affect [the juror's] competency or his impartiality in the trial"); *Dowthitt*, 931 S.W.2d at 251 (holding that, in absence of governmental misconduct in summoning venire, failure to grant attachments is not reversible error unless defendant shows injury); *Jackson*, 745 S.W.2d at 17 (holding that burden is on defendant to establish that injury occurred due to failure to grant attachment). We therefore hold that the trial court did not err

24

by refusing to grant appellant's request to issue a writ of attachment for the absent veniremember.

We overrule appellant's third issue.

## Jury Unanimity

In his fourth issue, appellant challenges the constitutionality of Penal Code section 21.02, which criminalizes the offense of continuous sexual abuse of a young child, because the statute does not require the jury to be unanimous regarding the specific acts of sexual abuse committed by a defendant.

The constitutionality of a statute is a question of law that we review de novo. *Vandyke v. State*, 538 S.W.3d 561, 570 (Tex. Crim. App. 2017); *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). When a person attacks the constitutionality of a statute, we begin with the presumption that the statute is valid and that the legislature did not act unreasonably or arbitrarily in enacting it. *Vandyke*, 538 S.W.3d at 570; *Lo*, 424 S.W.3d at 14–15. Generally, the burden rests on the party challenging the statute to establish that it is unconstitutional. *Vandyke*, 538 S.W.3d at 570–71; *Lo*, 424 S.W.3d at 15.

Penal Code section 21.02 provides that a person commits an offense if:

(1)    during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

25

(2)    at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense.

TEX. PENAL CODE ANN. § 21.02(b). Section 21.02(c) defines "act of sexual abuse" to mean any act that violates one or more of eight different sections of the Penal Code, including sexual assault, aggravated sexual assault, and certain acts of indecency with a child. *Id.* § 21.02(c); *Price v. State*, 434 S.W.3d 601, 606 (Tex. Crim. App. 2014) ("The 'acts of sexual abuse' are specifically enumerated and are lesser-included offenses of the offense of continuous sexual abuse."). Section 21.02(d) states:

> If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

TEX. PENAL CODE ANN. § 21.02(d).

"Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed." *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Ngo v. State*, 175 S.W.3d 738, 745 (Tex. Crim. App. 2005) ("Under our state constitution, jury unanimity is required in felony cases, and, under our state statutes, unanimity is required in all criminal cases."). The jury "must agree that the defendant committed one specific crime," but this does not mean that "the

26

jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act." *Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008); *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004) ("The unanimity requirement is not violated by instructing the jury on alternative theories of committing the same offense, in contrast to instructing the jury on two separate offenses involving separate incidents."). In both Texas and federal courts, the jury must be unanimous in finding that the defendant committed a specific statutory crime, "[b]ut it is the legislature, not the courts, that defines the forbidden act, the required culpability, and the particular result, if any." *Landrian*, 268 S.W.3d at 536; *see also Valdez v. State*, 218 S.W.3d 82, 84 (Tex. Crim. App. 2007) ("[T]he question of what a jury must be unanimous about in cases like this [involving jury finding on enhancement paragraphs] is determined by the legislative intent of the applicable statute.").

Although the Court of Criminal Appeals has not specifically addressed whether section 21.02 allows a defendant to be convicted on less than a unanimous verdict as to the acts constituting the offense of continuous sexual abuse of a child, and is therefore unconstitutional, multiple intermediate appellate courts, including the Fort Worth Court of Appeals, whose law we are bound to follow in this transfer

case,[8] have held that section 21.02 does not violate a defendant's constitutional right to a unanimous jury verdict.

In *Jacobsen v. State*, the Austin Court of Appeals was the first court to address whether section 21.02 violates the jury unanimity requirement. The court noted that jurors "must unanimously agree on each element of the crime in order to convict, but the jurors need not agree on all the underlying facts that make up a particular element." *Jacobsen v. State*, 325 S.W.3d 733, 736 (Tex. App.—Austin 2010, no pet.). The court focused on the specific language of section 21.02 as a whole, stating that, under that section, "it is the commission of two or more acts of sexual abuse over the specified time period—that is, the pattern of behavior or the series of acts— that is the actus reus element of the offense as to which the jurors must be unanimous in order to convict." *Id.* at 737. The individual acts of sexual abuse that make up the pattern of behavior—that is, the eight offenses listed in section 21.02(c) that serve

---

[8]     *See* TEX. R. APP. P. 41.3 (providing that, in transfer cases, "the court of appeals to which the case is transferred must decide the case in accordance with the precedent of the transferor court under principles of stare decisis if the transferee court's decision otherwise would have been inconsistent with the precedent of the transferor court"). This Court, like the Court of Criminal Appeals, has not specifically addressed whether Penal Code section 21.02 is an unconstitutional violation of the jury unanimity requirement, although we have followed the reasoning of cases from our sister courts in the jury unanimity context in holding that, in charging an offense for continuous sexual abuse, the State need not allege in the indictment the specific manner and means by which the defendant allegedly committed the statutorily-defined predicate offenses of continuous sexual abuse to provide constitutionally sufficient notice of the offense. *See Buxton v. State*, 526 S.W.3d 666, 678–82 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

as predicate offenses, such as sexual assault, aggravated sexual assault, and certain indecency with a child offenses—"are not themselves elements of the offense [of continuous sexual abuse], but are merely evidentiary facts, the manner and means by which the actus reus element is committed." *Id.* Ultimately, the Austin Court concluded that section 21.02 does not violate a defendant's due process rights "by permitting a conviction based on a jury's unanimous finding that the defendant engaged in a course of conduct consisting of repeated acts of sexual abuse, but without requiring jury unanimity as to the individual acts that made up the course of conduct." *Id.* at 739.

Other intermediate appellate courts have agreed with this analysis, holding that "[t]he commission of two or more acts of sexual abuse over a specified time period—that is, the pattern of behavior or the series of acts—is the element as to which the jurors must be unanimous in order to convict," and therefore section 21.02 "does not allow jurors to convict on the basis of different elements." *Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—Fort Worth 2013, no pet.); *see, e.g.*, *Carmichael v. State*, 505 S.W.3d 95, 106 (Tex. App.—San Antonio 2016, pet. ref'd); *Holton v. State*, 487 S.W.3d 600, 605–08 (Tex. App.—El Paso 2015, no pet.); *McMillian v. State*, 388 S.W.3d 866, 872–73 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Kennedy v. State*, 385 S.W.3d 729, 731–32 (Tex. App.—Amarillo 2012, pet. ref'd); *Render v. State*, 316 S.W.3d 846, 856–58 (Tex. App.—Dallas 2010, pet. ref'd).

Our sister courts have also held that because the alternate manner and means of committing the offense of continuous sexual abuse—the predicate offenses enumerated in section 21.02(c)—all involve the actual or intended sexual abuse of a child, are all felonies, are all morally equivalent, and are all conceptually similar, section 21.02 does not violate federal due process guarantees even though it allows jurors to disagree on the manner and means of committing the offense of continuous sexual abuse. *See Casey v. State*, 349 S.W.3d 825, 829–30 (Tex. App.—El Paso 2011, pet. ref'd); *see, e.g.*, *McMillian*, 388 S.W.3d at 872–73; *Jacobsen*, 325 S.W.3d at 739; *cf. White v. State*, 208 S.W.3d 467, 469 (Tex. Crim. App. 2006) (holding that predicate felonies alleged in felony-murder case "constitute the manner or means that make up the 'felony' element" of offense and jury unanimity is not required and holding that "dispensing with jury unanimity on the felonies alleged in this case does not violate due process because these felonies are 'basically morally and conceptually equivalent'") (quoting *Jefferson v. State*, 189 S.W.3d 305, 313 (Tex. Crim. App. 2006)).

We agree with the intermediate appellate courts that have addressed this issue and hold that Penal Code section 21.02 does not violate the state and federal guarantees of jury unanimity.

We overrule appellant's fourth issue.

30

## Lesser-Included Offense Instructions

Finally, in his fifth and sixth issues, appellant argues that the trial court erred by refusing to instruct the jury on the lesser-included offenses of indecency with a child by exposure and indecent exposure.

### A.    *Governing Law*

Code of Criminal Procedure article 37.09 pertains to lesser-included offenses and provides that an offense is a lesser-included offense if:

> (1)    it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2)    it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3)    it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4)    it consists of an attempt to commit the offense charged or an otherwise included offense.

TEX. CODE CRIM. PROC. ANN. art. 37.09.

Courts apply a two-step analysis to determine whether an instruction on a lesser-included offense should be given to the jury. *State v. Meru*, 414 S.W.3d 159, 162 (Tex. Crim. App. 2013); *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). The first step of this analysis is a question of law that does not depend on the evidence at trial and compares the elements of the offense as alleged in the indictment with the elements of the requested lesser-included offense. *Meru*, 414

S.W.3d at 162; *see Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007) (holding that first step in lesser-included offense analysis must be "capable of being performed before trial by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser-included offense"). The question at this step is, "[A]re the elements of the lesser offense 'established by proof of the same or less than all the facts required to establish[] the commission of the offense charged'?" *Ex parte Watson*, 306 S.W.3d 259, 264 (Tex. Crim. App. 2009) (quoting TEX. CODE CRIM. PROC. ANN. art. 37.09(1)). Courts compare the statutory elements and any "descriptive averments," such as "non-statutory manner and means[] that are alleged for purposes of providing notice," alleged in the indictment for the greater offense to the statutory elements of the lesser offense. *Id.* at 273 (op. on reh'g) (per curiam).

If the analysis under the first step supports a conclusion that the defendant's requested lesser offense is a lesser-included offense, the court moves to the second step of the analysis and considers whether a rational jury could find that, if the defendant is guilty, he is guilty only of the lesser offense. *Meru*, 414 S.W.3d at 162–63. This step is a factual determination that is based on the evidence presented at trial. *Id.* at 163. If there is evidence that raises a fact issue on whether the defendant is guilty only of the lesser offense, a lesser-included offense instruction is warranted, "regardless of whether the evidence is weak, impeached, or contradicted." *Id.*; *Hall*,

32

225 S.W.3d at 536 ("In this step of the analysis, anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge."). The evidence must establish the lesser offense as a "valid, rational alternative to the charged offense." *Hall*, 225 S.W.3d at 536 (quoting *Forest v. State*, 989 S.W.2d 365, 367 (Tex. Crim. App. 1999)). The evidence may be "weak or contradicted," but it "must still be directly germane to the lesser-included offense and must rise to a level that a rational jury could find that if [the defendant] is guilty, he is guilty only of the lesser-included offense." *Cavazos*, 382 S.W.3d at 385. To meet this threshold, the evidence must be more than mere speculation; this threshold "requires affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Id.*

**B. *Analysis***

Appellant argues that the trial court erred by refusing to include jury instructions on the lesser-included offenses of indecency with a child by exposure and indecent exposure. He contends that the evidence establishes that he committed the offenses of indecency with a child by exposure and indecent exposure because defense counsel asked Jessica if, at the time of the last instance of abuse, appellant "would have had to expose himself . . . to do some of these things back on September 27th," and Jessica agreed.

33

The elements of continuous sexual abuse, as alleged in the indictment against appellant, are:

(1)     appellant;

(2)     during a period of time that is 30 days or more in duration;

(3)     committed two or more acts of sexual abuse, namely

(a)     aggravated sexual assault of a child under the age of fourteen by causing his finger to penetrate Jessica's sexual organ;

(b)     aggravated sexual assault of a child under the age of fourteen by causing his mouth to contact Jessica's sexual organ;

(c)     indecency with a child by causing Jessica to contact any part of his genitals; or

(d)     indecency with a child by causing his hand to contact any part of Jessica's genitals; and

(4)     at the time of the commission of each of these acts of sexual abuse, appellant was seventeen years of age or older and Jessica was younger than fourteen.

*See* TEX. PENAL CODE ANN. § 21.02.

A person commits the offense of indecency with a child by exposure if:

(1)     with a child younger than seventeen years of age, and

(2)     with intent to arouse or gratify the sexual desire of any person,

(3)     the person exposes the person's anus or any part of the person's genitals, knowing the child is present.

*Id.* § 21.11(a)(2)(A). A person commits the offense of indecent exposure if he "exposes his anus or any part of his genitals with intent to arouse or gratify the sexual

desire of any person, and he is reckless about whether another is present who will be offended or alarmed by his act." *See id.* § 21.08(a).

Assuming, without deciding, that indecency with a child by exposure and indecent exposure are lesser-included offenses of continuous sexual abuse, we nevertheless disagree with appellant that he was entitled to instructions on these lesser-included offenses. In the second step of the lesser-included offense analysis, we must consider the evidence presented at trial and determine whether a rational jury could find that, if the defendant is guilty, he is guilty *only* of the lesser offense. *See Meru*, 414 S.W.3d at 162–63. There must be affirmative evidence in the record that "both raises the lesser-included offense and rebuts or negates an element of the greater offense." *See Cavazos*, 382 S.W.3d at 385.

Appellant relies on the following exchange between defense counsel and Jessica as evidence that he claims entitles him to the requested lesser-included offense instructions:

Q: You told her [Castillo] that he [appellant] touched you on your private parts; is that correct?

A: Yes.

Q: Back on September 27th?

A: Yes.

Q: And that he exposed himself; is that correct?

A: No.

Q: He would have had to expose himself if—would that be correct?

35

A:    Can you—

Q:    In doing some of these things back on September 27th?

A:    Can you say that again? I'm sorry.

Q:    He would have had to expose himself, wouldn't he, to do some of these things back on September 27th?

A:    Yes.

Appellant argues that "[a]ll the acts are contained within each other" and that, for the alleged improper contact to occur, he necessarily had to have exposed himself to Jessica.

Although this testimony is evidence that appellant exposed himself to Jessica, this testimony does not negate any element of the charged offense of continuous sexual abuse. There is no testimony, for example, that appellant exposed himself to Jessica on an isolated incident with no other form of sexual abuse occurring at that time. Instead, the testimony is that he exposed himself in the course of committing the charged acts of sexual abuse against Jessica. *Cf. Aekins v. State*, 447 S.W.3d 270, 277 n.28 (Tex. Crim. App. 2014) ("[O]ne rape will frequently involve the defendant's acts of exposing his genitals, then contacting the victim's genitals with his own, then penetrating the victim's genitals with his. It is a 'continuing' crime in the sense that the defendant commits several criminal acts on the way to completing the rape, but the lesser acts of exposure and contact merge into the ultimate act of penetration."); *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) ("The

record in this case does not show an occasion during the assaults when the exposure was a separate offense. Under the facts of these incidents, exposure was incident to and subsumed by the aggravated sexual assault."). For a defendant to be entitled to an instruction on a lesser-included offense, there must be affirmative evidence in the record that "both raises the lesser-included offense and rebuts or negates an element of the greater offense." *See Cavazos*, 382 S.W.3d at 385. The record does not contain any evidence that both raises a lesser-included offense and rebuts or negates an element of the greater offense of continuous sexual abuse. We therefore conclude that the trial court did not err by refusing appellant's requested instructions on the lesser-included offenses of indecency with a child by exposure and indecent exposure.

We overrule appellant's fifth and sixth issues.

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Chief Justice Radack and Justices Keyes and Landau.

Publish.  TEX. R. APP. P. 47.2(b).